UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus PEREZ, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Casimiro ROCHIN, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Maria Creselda LOMBERA, Defendant-
Appellant.

Nos. 73–2007, 73–2157 and 73–2008.

United States Court of Appeals,
Ninth Circuit.

Jan. 21, 1974.

Earl L. Hanson, Mitchell W. Egers (Argued), of Hanson & Egers, Los Angeles, Cal., for Jesus Perez.

John K. Van de Kamp, Federal Public Defender, Kenneth L. Collins, Deputy Federal Public Defender, Los Angeles, Cal., for Maria Creselda Lombera.

David C. Marcus (Argued), Los Angeles, Cal., for Casimiro Rochin.

William D. Keller, U. S. Atty., Darrell W. MacIntyre, Asst. U. S. Atty. (Argued), Los Angeles, Cal., for plaintiff-appellee.

Beforé ELY and TRASK, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

This is a consolidated appeal by defendants-appellants Jesus Perez, Casimiro Rochin, and Maria Creselda Lombera from their jury convictions for conspiracy to possess and distribute heroin, in violation of 21 U.S.C. § 846, and possession with intent to distribute and distribution of heroin, in violation of 21 U.S. C. § 841(a)(1).

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

*Statement of Facts*

The evidence, viewed in the light most favorable to the Government, may be summarized as follows:

On December 5, 1972 Sergeant Jose Villalba of the Los Angeles Police Department met in Oxnard, California with Alvaro Lombera, who was indicted, but not tried, with appellants. Villalba, acting in an undercover capacity, indicated that he was interested in buying a large quantity of heroin. Lombera informed him that "their" supply was low and that "they had only eight ounces available." Lombera agreed to sell Villalba one ounce of heroin, as a sample, for $1,000.

Lombera instructed Sergeant Villalba to remain at their meeting place, stating that he would return in a half hour. Lombera went to his residence, which was then under police surveillance, and was met there by appellant Rochin. A few moments later Lombera drove Rochin's automobile to the place where Sergeant Villalba was waiting. Lombera sold Villalba one ounce of 74.3% heroin for $1,000 and stated that by the following Wednesday he would be able to sell him 20 ounces for $950 per ounce.

On December 14, 1972 Sergeant Villalba telephoned Lombera that he was still interested in purchasing heroin. They arranged another meeting in Oxnard, at which Lombera agreed to sell Villalba 15 ounces of heroin for $950 per ounce on December 17, 1972.

Villalba and Lombera met at the intersection of Fifth and Ventura in Oxnard on December 17. The intersection was under surveillance by Officer Quinn of the Ventura County Bureau of Narcotics Enforcement and Detective Sergeant Thomas of the City of Port Hueneme.

Quinn was stationed in a parked automobile in a Sav-On Drugstore parking lot adjacent to the intersection. He testified that at about noon he saw appellant Perez inside a car parked directly in front of the drugstore "in a position where he could observe Sergeant Villalba

meeting with Mr. Lombera." Quinn also observed Rochin in a vehicle parked in a parking lot directly across the street, in a position where he could observe Villalba and Lombera. Quinn testified that it is a normal procedure for those dealing in large quantities of heroin to post lookouts to watch for police or Government agents.

Originally the heroin sale was to have taken place at the intersection, but Lombera told Sergeant Villalba that there had been a change in plans, and that he was to follow Lombera to a flower ranch where Lombera and his wife, appellant Maria Lombera, were employed. They drove directly to a ranch located about two to two and one-half miles from the intersection, followed by Rochin.

Officer Quinn left his surveillance post to follow Rochin, and as he drove by Perez he noticed that "Mr. Perez was turned around looking over his right shoulder. Mr. Rochin turned left on Fifth, proceeded up Fifth. At that time Mr. Perez looked around and followed his [Rochin's] vehicle in his [Perez'] line of sight up Fifth."

Upon arriving at the ranch Lombera entered a greenhouse. About ten seconds later he came out of the greenhouse with his wife, appellant Lombera, who was carrying a black purse and a shopping bag. Mrs. Lombera handed the purse to her husband. He opened it and removed four packages containing 16 ounces of 82.4% heroin. Lombera placed the heroin in the trunk of Sergeant Villalba's vehicle. Mrs. Lombera then returned to the greenhouse carrying the shopping bag. Villalba arrested Lombera.

A few moments later Rochin drove into the driveway of the ranch and parked his vehicle. He approached Sergeant Villalba, saying, "Is the thing good?" Villalba replied, "Yes, it's good", and arrested Rochin. Located behind the driver's seat of Rochin's vehicle was a bag containing about two pounds of maltose sugar, which Villalba testified is a common ingredient used to cut heroin.

Another officer [1] then entered the greenhouse, arrested Mrs. Lombera, and seized the shopping bag she had previously carried to and from the green-house, which was located about 20 feet from where she was standing. The bag contained in packages 13 ounces of 83.-5% heroin.

Detective Thomas, who was stationed in a hamburger stand at the intersection, also observed Perez in the parking lot. He had known Perez for about a year and a half. He saw Perez leave, headed in the direction of the road leading to the ranch. When Thomas arrived at the ranch approximately three to five minutes later Perez was there and attempting to leave at a speed of 20 to 25 miles an hour. Thomas, who had been in radio contact with a surveillance helicopter, blocked Perez' exit and placed him under arrest. Located on the floorboard in the back seat of Perez' vehicle was a hat in which 1.5 grams of 27.7% cocaine were found concealed in the hatband.

Pursuant to a warrant a search of Rochin's residence was conducted on the evening of December 17. Contained in an attache case in Rochin's bedroom was $5,150, including ten marked $100 bills which Sergeant Villalba had used to purchase the sample ounce of heroin from Lombera on December 5.

### Contentions on Appeal

(1) All appellants contend that the evidence was insufficient to sustain their convictions; (2) Perez and Rochin contend that the court erred in admitting evidence of Perez' possession of cocaine; (3) Rochin argues that hearsay statements of Lombera with respect to the heroin transactions of December 5 and 17 should not have been admitted; (4) Rochin and Mrs. Lombera claim that the prosecutor subjected her to improper cross-examination; (5) Mrs. Lombera contends that the Government's rebuttal

evidence and evidence with respect to the contents of her shopping bag were improperly admitted; and (6) all appellants complain of improper remarks by the prosecutor in his opening statement and closing arguments to the jury.

### Sufficiency of the Evidence
#### (a) Mrs. Lombera

■ Mrs. Lombera argues that the evidence was "insufficient to establish that [she] knowingly participated in a conspiracy, consciously maintained dominion and control over the sealed packages of heroin, or intended to distribute that heroin." We find no merit in this contention. She carried a purse and a shopping bag, each containing a large quantity of heroin, from the greenhouse to the Villalba vehicle. She handed the purse to her husband, who removed the heroin from the purse and placed it in the trunk of the Villalba car. Mrs. Lombera returned to the greenhouse with the shopping bag. Possession may be joint as well as several, constructive as well as actual. Mrs. Lombera had dominion and control over both the purse and shopping bag. Under the circumstances, this was persuasive evidence of both actual and constructive possession, as well as "a potent circumstance tending to prove knowledge of the presence" of the narcotics. Evans v. United States, 257 F.2d 121, 128 (9 Cir. 1958), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958). Intent to distribute may be inferred from the large amount of heroin involved. See United States v. Mather, 465 F.2d 1035, 1037–1038 (5 Cir. 1972), cert. denied, 409 U.S. 1085, 93 S.Ct. 685, 34 L.Ed.2d 672 (1972).

#### (b) Rochin

■ We find ample evidence to sustain Rochin's conviction on the conspiracy charge.[2] He met Lombera on December 5, 1972 minutes before Lombera

---

1. This officer had followed Villalba from the street intersection to the ranch and observed Mrs. Lombera with the purse and bag and the delivery of the heroin by Lombera to Villalba.

2. Since the sentences imposed upon Rochin run concurrently it is unnecessary to consider his contention that the evidence was insufficient to sustain convictions on the other counts. United States v. Moore, 452 F.2d 576, 577 (9 Cir. 1971).

delivered, in Rochin's car, the first ounce of heroin sold to Villalba. At the time of his arrest Rochin had in his bedroom the $1,000 paid to Lombera by Villalba for this heroin. Rochin acted as a lookout at the meeting between Lombera and Villalba at the intersection on December 17, followed Lombera and Villalba to the ranch where the heroin was sold, and then approached Villalba and asked him, "Is the thing good?" In addition, two pounds of maltose, a common ingredient used to cut heroin, was found in Rochin's car at the time of his arrest.

■ It is true, as Rochin contends, that the case against him is based upon circumstantial evidence. However, circumstantial evidence "is not inherently less probative than direct evidence", United States v. Nelson, 419 F.2d 1237, 1239 (9 Cir. 1969), and as we recognized in Diaz-Rosendo v. United States, 357 F.2d 124, 129 (9 Cir. 1966), the nature of a conspiracy is such that it can rarely be proved in any other way.

### (c) Perez

■ The evidence of Perez' participation in the conspiracy is less conclusive. The jury could properly find, however, that he was acting as a lookout at the street intersection where final plans for the heroin sale were made.[3] There was evidence that it is a normal procedure for those dealing in large quantities of heroin to place lookouts to watch for police and Government agents. Perez was observed in his automobile in a position where he could watch Lombera and Villalba. He also watched Rochin, another lookout, and followed Rochin to the ranch where the heroin was sold. He attempted to leave the ranch shortly after the sale and the arrest of the Lomberas and Rochin.

It is true that Perez' presence at the ranch immediately after the sale and his attempted flight would not be sufficient to establish his guilt. There is evidence, however, of his active participation in the conspiracy through acting as a lookout. As this court said in United States v. Knight, 416 F.2d 1181, 1184 (9 Cir. 1969): "It is sufficient if the acts and conduct of a defendant were of such character that the minds of reasonable men could conclude therefrom that an unlawful agreement or understanding existed, and that the defendant, with knowledge of the existence of the unlawful enterprise, acted to further it."

### Possession of Cocaine

Perez and Rochin claim prejudicial error in admitting evidence that 1.5 grams of cocaine were found concealed in a hat in the back seat of Perez' automobile. The district court made it clear to counsel that this evidence was admitted against Perez only and against him only to show knowledge, intent and motive.[4]

As a general rule evidence of other offenses is not admissible; but this court has recognized that, "Proof of other crimes has * * * been held admissible * * * to establish motive or intent, or absence of mistake or accident, * * * or when the acts proved are so inextricably mixed or connected with the crime charged as to tend to prove it * * *." Parker v. United States, 400 F.2d 248, 252 (9 Cir. 1968), cert. denied, 393 U.S. 1097, 89 S.Ct. 892, 21 L.Ed.2d 789 (1969).

At oral argument counsel placed heavy reliance on Enriquez v. United States, 314 F.2d 703 (9 Cir. 1963), where it was held that evidence of prior use and possession of marihuana was not admissible to show an intent to transport and sell

---

3. Testifying in his own behalf, Perez denied that he was present at the intersection, stating that he left a bar where he was employed at 12:16 P.M. and went directly to the ranch. His credibility was a question for the jury. It is obvious that the jury did not believe his story and accepted the testimony of the two surveillance officers.

4. The court offered to instruct the jury that this evidence "was admitted against Perez only and against Perez only to show knowledge, intent, and motive, and not to show his criminal propensity or that he committed another offense or anything else." Counsel for all defendants advised the court that they did not wish to have this instruction given.

heroin. *Enriquez* is distinguishable. Perez was charged, *inter alia,* with possession and conspiracy to possess heroin. The cocaine was found in his possession at the time the offense charged was committed. Both heroin and cocaine are "narcotic drugs" under 21 U.S.C. § 802(16) and possession of either with intent to distribute is a criminal offense under the same section, 21 U.S.C. § 841(a)(1).[5]

█ We agree with the district court that evidence of possession of the cocaine at the time of the offense tended to show knowledge, intent and motive. It is true, as Perez argues, "that evidence which discloses the commission of another offense should be excluded, even though relevant, if the value of the evidence is limited and the danger of prejudice from its use is great." DeVore v. United States, 368 F.2d 396, 398 (9 Cir. 1966). We cannot say that the district court abused its discretion in deciding that the tendency of the cocaine evidence to prove the essential element of knowledge outweighed its potential prejudicial effect upon the accused.

### Hearsay Statements of Lombera

█ Rochin complains of the admission of the testimony of Sergeant Villalba relating to statements made by Lombera to Sergeant Villalba with respect to the heroin transaction of December 5 and 17. It is well settled that an out-of-court statement of one conspirator against his fellow conspirators is admissible if the statement was made in the course of and in furtherance of the conspiracy, and there is independent proof of the existence of the conspiracy. Dutton v. Evans, 400 U.S. 74, 81, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970); Carbo v. United States, 314 F.2d 718, 735 (9

Cir. 1963). It is clear that the statements here were made in furtherance of the conspiracy, and Rochin's participation in the conspiracy was adequately established by independent evidence.

### Improper Cross-Examination

Mrs. Lombera argues that the prosecutor subjected her to improper cross-examination[6] in asking the following question:

> "Q. All right. Now, Mrs. Lombera, from about June of 1972 till December of '72 you were sending money orders to Mexico in the amounts of $500 and $1,000, were you not?"

Mrs. Lombera was permitted to answer, over counsel's objection. She answered in the negative. The question was repeated several times, with the same response, until the court sustained an objection for repetitive questioning.

█ On rebuttal the Government offered to prove that money orders in amounts of $100 to $150, cumulatively amounting to $1,000, had been sent to a joint bank account of the Lomberas in Mexico late in 1969. The court properly held this evidence inadmissible for impeachment purposes. The jury was instructed:

> "A question is never evidence except as it supplies meaning to its answer. For example, a question was asked Mrs. Lombera regarding certain money orders, and this question is not evidence except as it supplies meaning to its answer."

When the court offered to give this instruction, counsel expressly agreed that it should be given. No objection was interposed when the instruction was given; nor did counsel at any time request any clarifying or additional instruction.[7]

---

5. The district court recognized that a different question would be presented if Perez' possession involved "something like marihuana" and not a "narcotic drug".

6. In his brief Rochin "adopts" this argument of counsel for Mrs. Lombera. It is unnecessary to consider whether Rochin has standing to complain of this alleged error.

7. In advance of closing arguments the court went over all proposed instructions with counsel and following the charge expressly asked each counsel whether he had an objection to any of the instructions. Each answered in the negative.

While we do not approve of the prosecutor's conduct in asking the question, it was not so prejudicial as to require reversal in view of the curing instruction and other evidence against Mrs. Lombera.[8]

### Rebuttal Evidence and Evidence of Contents of Shopping Bag

Mrs. Lombera contends that the Government's rebuttal evidence and evidence that her shopping bag contained heroin were improperly admitted.

Mrs. Lombera had denied any knowledge of her husband's possession and sale of heroin. In rebuttal Sergeant Villalba testified that he telephoned the Lombera residence on December 10, 1972, and was informed by Mrs. Lombera that her husband was not there. Several minutes later he called again and stated to Mrs. Lombera, "Don't hang up. I have a lot of money tied up in a deal with your husband and I want to talk with him, and I would like for him to call me * * *."

He gave Mrs. Lombera his number, and about 45 minutes later she telephoned him and said, "Wait. Wait a minute." Her husband then came on the telephone and Sergeant Villalba informed him that he had a lot of money tied up and was waiting for the transaction to take place.

Questions as to the propriety of rebuttal evidence "are generally subject to the sound discretion of the trial court", and, in the absence of abuse, this discretion is not reviewable. Lelles v. United States, 241 F.2d 21, 25 (9 Cir.

1957), cert. denied, 353 U.S. 974, 77 S. Ct. 1059, 1 L.Ed.2d 1136 (1956). We find no abuse of discretion in admitting the rebuttal testimony of Sergeant Villalba.

We find no merit in Mrs. Lombera's contention that the court erred in admitting testimony that her shopping bag contained heroin. Delgado v. United States, 327 F.2d 641 (9 Cir. 1964), upon which she relies, is distinguishable. There marihuana was found in a drawer of a night stand in a room occupied by two people, and the court found insufficient evidence that either had possession. Here Mrs. Lombera carried her purse and the shopping bag to the Villalba car, where the heroin was taken from her purse and placed in the car. She returned to the greenhouse with the shopping bag minutes before she was arrested and the heroin found in the bag.[9]

### Prosecutor's Argument to Jury

Finally, all appellants contend that the prosecutor in his opening statement and closing arguments made a number of prejudicial remarks which deprived appellants of a fair trial. No objections were made to any of these statements, either during the argument or thereafter, and there was no request for a corrective instruction. It is well established that in the absence of an objection or request for a corrective instruction, there must be plain error to afford a basis for reversal. See United States v. Memoli, 449 F.2d 160 (9 Cir. 1971), cert. denied, 405 U.S. 928, 92 S. Ct. 979, 30 L.Ed.2d 801 (1972).[10] We

---

8. In denying a motion for mistrial the district court found "general good faith on the part of the government in asking that question * * *."

9. Arellanes v. United States, 302 F.2d 603, 606–607 (9 Cir. 1962) is likewise distinguishable. There the husband had exclusive control or dominion over the drugs, and the court held the wife's presence and association, without more, with the person having control was insufficient.

10. See also Harris v. United States, 131 U. S.App.D.C. 105, 402 F.2d 656 (1968) where the court said in part:

"In short, Appellant invoked none of several possible methods for bringing these remarks to the attention of the trial judge who was best able to assess their effect on the jury and to undertake corrective measures. The problem of raising objections to improper argument of either counsel presents obvious practical difficulties. Counsel may, of course, object during the argument, but unless the departure from the proprieties is egregious neither the court nor the jury is likely to look favorably upon such an interruption at that stage. The more usual treatment is for counsel to approach the bench at

have examined the prosecutor's opening statement and closing arguments and conclude that the claimed prejudice is clearly not plain error.

 Moreover, most of the remarks of the prosecutor questioned by appellants were clearly within the scope of the evidence properly before the jury, and the claims of prejudice are too insubstantial to constitute reversible error, even if an objection had been made. See Orebo v. United States, 293 F.2d 747, 749 (9 Cir. 1961), cert. denied, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962). We do question the propriety of the prosecutor's conclusion in his opening argument:

> "What we have is a common understanding among four people, one of which is obviously so guilty that he's not on trial in front of you, a common understanding to continue and operate an illegal activity. You have enough heroin in this case to supply probably all the people that live in parts of the Valley in this town. You can imagine the quantity of heroin involved in this case that is taken out of the hands of little children in this town by the work of these narcotic agents."

 We recognize that it is difficult to draw a fine line between what is permissible and what is impermissible in closing arguments. It is clear, however, that a prosecutor "should refrain from argument which' would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." [11] While we conclude that the prosecutor exceeded the bounds of propriety in this argument, it was not sufficiently prejudicial to constitute reversible error, particularly in the absence of objection or request for a corrective instruction.

Each judgment of conviction is affirmed.

---

the conclusion of the summing up and request an immediate instruction to correct the impact of objectionable material. In the gravest situation it may be his duty to raise the issue of a mistrial. However,

since none of these avenues was pursued here, we find no basis for reversal."

11. American Bar Association Standards for Criminal Justice, The Prosecution Function, § 5.8(d).