UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Rafael PENAGOS,
Defendant-Appellant.

No. 85–5196.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1987.

Decided July 29, 1987.

Stephen Clymer and Manuel A. Medrano, Los Angeles, Cal., for plaintiff-appellee.

Michael D. Abzug, Los Angeles, Cal., for defendant-appellant.

Before BEEZER, HALL and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

Jose Penagos appeals from convictions for 1) conspiracy to possess with intent to distribute narcotics, and 2) possession with intent to distribute narcotics. Viewed in the light most favorable to the government, evidence indicates that Penagos acted only as a passive bystander to drug transactions. Similarly, evidence does not indicate that Penagos had dominion or control over narcotics seized in drug raids or that he knew drugs were in the automobile in which he traveled. We reverse both convictions.

### Standard of Review

Penagos (hereafter referred to as "defendant") claims that his convictions rest on insufficient evidence. The Court of Appeals will uphold a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each essential element of the crime charged. *United States v. Sharif,* 817 F.2d 1375, 1377 (9th Cir.1987), quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

### Background

The nature of this case requires us to recite in some detail events leading to the arrest of defendant. Viewed in the light most favorable to the government, evidence at trial showed the following:

On March 13, 1985, Reinaldo Guarin agreed to deliver ten kilograms of cocaine to an undercover narcotics agent at a designated location. Police followed Guarin to an apartment complex. Guarin removed two cardboard boxes from the trunk of the Chevrolet Monte Carlo he was driving and took the boxes inside. Guarin's name appeared on the mailbox for apartment 305.

Pedro Gonzalez arrived at the apartment complex approximately two hours later in a brown Plymouth Duster. Gonzalez entered the apartment complex.

Police first observed defendant shortly after Gonzalez' arrival, coming out of the apartment complex with Guarin and Gonzalez. Guarin carried a cardboard box, which he placed in the trunk of the Monte Carlo. Guarin then parked the Monte Carlo parallel with the Duster and transferred two objects from the trunk of the Monte Carlo to the trunk of the Duster. During the transfer, defendant stood nearby and appeared to be looking up and down the street. Gonzalez and defendant then reentered the apartment complex.

Guarin drove the Monte Carlo to Beverly Hills, where he removed a box from the trunk and delivered the box to an undercover Bureau of Narcotics agent. Guarin returned to the apartment complex. The box contained cocaine.

Gonzalez emerged from the apartment complex carrying another box, which he placed behind the driver's seat of the Monte Carlo. Gonzalez delivered two such boxes before he returned to the apartment complex. Police arrested the recipients and found cocaine in each of the boxes. Police also found a telephone pager in the automobile of one of the arrestees.

Next, Guarin drove the Duster to a Denny's restaurant. Defendant rode along as a passenger. After Guarin and defendant spent three minutes inside the restaurant, Guarin, defendant and Edgar Salazar left Denny's and entered the Duster. They drove to a gas station parking area next door. After a brief interval, Salazar emerged carrying a brown paper bag. Salazar placed the bag in his automobile. A

subsequent search of Salazar's automobile uncovered a brown paper bag containing cocaine.

On their way back to the apartment complex, Guarin and defendant stopped and spent approximately 45 to 60 minutes placing and receiving calls at public telephones. One of the men wore a telephone pager. Guarin and defendant then returned to the apartment complex, where they met Gonzalez outside. The three spoke briefly before they entered the complex.

Police obtained warrants and arrested Gonzalez and defendant in apartment 301. Four telephone pagers were found in apartment 301. Police found a box containing cocaine in apartment 305 and a similar box in the trunk of the Duster. Guarin was arrested elsewhere.

*Analysis*

A. *Conspiracy With Intent To Distribute Narcotics*

■ The elements of conspiracy are 1) an agreement to accomplish an illegal objective, 2) coupled with one or more acts in furtherance of the illegal purpose, and 3) the requisite intent necessary to commit the underlying substantive offense. *United States v. Indelicato*, 800 F.2d 1482, 1483 (9th Cir.1986).

1. Existence of Conspiracy

The existence of a conspiracy may be proved by circumstantial evidence that defendants acted together for a common illegal goal. *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir.1986). The government produced ample evidence indicating the existence of an ongoing conspiracy between Guarin and Gonzalez to possess and distribute cocaine. Guarin and Gonzalez operated out of the same apartment complex, shared vehicles for delivery of cocaine, and obtained cocaine from a common source. In addition, each handled cocaine that the other delivered to buyers.

2. Act In Furtherance of Conspiracy

■ Once a conspiracy exists, evidence establishing beyond a reasonable doubt defendant's connection with the conspiracy, even though the connection is slight, is sufficient to convict defendant of knowing participation in the conspiracy. *United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987).[1] While mere proximity to the scene of illicit activity is not sufficient to establish involvement in a conspiracy, a defendant's presence may support such an inference when viewed in context with other evidence. *United States v. Reese*, 775 F.2d 1066, 1071–72 (9th Cir.1985). The government failed to produce sufficient evidence indicating that defendant took any action in furtherance of the conspiracy.

■ The government asserts that defendant acted as a lookout while Guarin and Gonzalez loaded cocaine into automobiles.[2] Counter-surveillance activities qualify as acts in furtherance of a conspiracy. *United States v. Perez*, 491 F.2d 167, 171 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). The

---

1. This rule creates a presumption that one who acts in furtherance of a conspiracy knows of the conspiracy's existence. We need not decide whether proof of action in furtherance of a conspiracy also raises a presumption of intent to commit the underlying offense, (*see, e.g., United States v. Perez*, 491 F.2d 167 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974) (no direct evidence of intent to possess and distribute heroin)), because the government failed to carry its burden of proving an act in furtherance of conspiracy in this case.

2. The government produced no evidence indicating that defendant acted as a lookout when he rode along for the transfer of cocaine to Salazar at Denny's. Although police followed the Duster to Denny's, they reported no suspicious activity en route. Had defendant been acting as a lookout, he would have looked about regularly to determine whether he and Guarin were being followed. Once at Denny's, a lookout would be expected to either case the interior of the restaurant or stand watch outside. *See, e.g., United States v. Cloughessy*, 572 F.2d 190 (9th Cir.1977) (discussed *infra*). Defendant did neither. Instead, he accompanied Guarin inside.

government relies on *Perez* to support defendant's conviction.[3]

Police observed Perez in a parked car at an intersection where an undercover agent was to meet a conspirator for a heroin transaction. Perez watched the seller and another lookout parked across the street. When the agent arrived, the seller instructed him that plans had changed, and that the sale would occur a ranch approximately 2½ miles away. When the agent and seller departed, the other lookout followed them. Police observed Perez looking over his shoulder, watching the other lookout drive away.

As the other lookout passed Perez, Perez "looked around and followed the [other lookout's] vehicle in his [Perez'] line of sight...." *Id.* at 169. Perez then followed the other lookout to the ranch where the transaction and arrests occurred. Perez was arrested as he attempted to leave the ranch. The Court determined that Perez actively participated in the conspiracy by acting as a lookout and sustained Perez conviction for conspiracy to possess and distribute heroin. *Id.* at 171.

 Evidence against defendant differs from that against Perez in several crucial respects. First, defendant's alleged counter-surveillance activities did not occur at times or places where the risk of detection and capture is greatest, i.e. at meetings between buyers and sellers and during actual transfer of drugs to buyers. Perez was present when seller and buyer met, and Perez followed them to the situs of the transaction.

Second, defendant was present on only one of three occasions when either Guarin or Gonzalez loaded or unloaded cocaine at the apartment complex. If defendant's role in the conspiracy was to act as lookout while cocaine was shuttled between an apartment and automobiles, one would expect him to have been visible on other

similar occasions. Indeed, there is no evidence concerning defendant's activities while Gonzalez and Guarin delivered cocaine. Perez, by contrast, was present or close at hand during all phases of the heroin transaction that led to his arrest, thus suggesting that he was engaged in continuous surveillance throughout the transaction. The absence of evidence that defendant was present on other occasions while Guarin and Gonzalez loaded and unloaded cocaine in automobiles and, particularly, on occasions where the vast majority of cocaine was delivered to buyers casts serious doubt on the government's interpretation of defendant's stroll to the curb.

Third, the evidence against defendant does not identify any particular persons or activities that were objects of defendant's attention as he looked up and down the street. The government contends that defendant "scanned" up and down the street while Guarin and Gonzalez transferred cocaine from the Monte Carlo to the Duster. However, the government offered no evidence in support of this inculpatory characterization. That Guarin, Gonzalez and defendant actually were under surveillance does not establish that defendant must have been looking for police. By contrast, Perez' behavior indicated that his primary interest was in activities of a heroin dealer and another lookout.

Finally, unlike Perez, defendant did not follow separately Guarin or Gonzalez to points of delivery and did not attempt to evade capture. In sum, defendant's behavior was perfectly consistent with that of an innocent person having no stake or interest in drug transactions.

We agree that counter-surveillance activities constitute acts in furtherance of a conspiracy. However, the government did not produce evidence that would allow a rational jury to conclude beyond a reason-

---

**3.** The government also relies on *United States v. Batimana*, 623 F.2d 1366 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). In *Batimana*, the defendant loitered suspiciously about the baggage claim area for 45 minutes before driving to a hotel where a conspirator delivered heroin to an informant. Once in the hotel room, the defendant placed his hand in a bag in order to taste the heroin. Finally, statements of one of the conspirators and the defendant himself directly implicated the defendant in the conspiracy. The evidence against the defendant was significantly greater than the evidence against Penagos. Accordingly, we do not consider *Batimana* supportive of the government's position.

able doubt that defendant acted as a lookout or committed any act in furtherance of the conspiracy.[4]

Our conclusion is reinforced by cases decided in this Circuit after *Perez.* In *United States v. Lopez,* 625 F.2d 889 (9th Cir. 1980), and *United States v. Cloughessy,* 572 F.2d 190 (9th Cir.1977), this Court reversed convictions for conspiracy to possess and distribute narcotics where circumstantial evidence of the respective defendants' involvement in drug conspiracies was significantly stronger than the evidence against defendant in this case.

*Lopez* 1) spent the day with major drug conspirators, 2) walked around the perimeter of the conspirators' house after someone looked out of a window once and out the front door twice, 3) accompanied conspirators to the scene of a drug transaction, and, 4) told arresting officer that he "knew what was going down," and that, but for a leg injury, he would never have been caught.

*Cloughessy* drove two acquaintances who clearly were involved in a narcotics conspiracy to a hotel for negotiations with undercover Drug Enforcement Agents agents. Cloughessy and the two conspirators followed the agents to a restaurant during a break in negotiations. While the conspirators remained in the automobile, Cloughessy entered the restaurant, used the rest room, and returned to the automobile. He obtained money from the conspirators, reentered the restaurant and drank beer until the agents left. Cloughessy then drove the conspirators back to the hotel for further negotiations. When one of the DEA agents left the hotel to obtain purchase money from the DEA office, Cloughessy tailed him and reported his findings to the conspirators. Despite this circumstantial evidence of counter-surveillance activity, this Court reversed Cloughessy's conviction for conspiracy with intent to distribute narcotics.

*Cloughessy* and *Lopez* differ from this case only in that the evidence against Cloughessy and Lopez was greater than that against defendant.[5] Although only a slight connection between the defendant and the conspiracy is required to sustain a conviction, the government failed to produce evidence from which any rational jury could infer beyond a reasonable doubt that defendant was in any way connected with the conspiracy. Accordingly, we must reverse defendant's conviction on the conspiracy count.

### B. *Possession With Intent to Distribute Narcotics*

■ A person may not be convicted of illegal possession unless he knows contraband is present and is capable of exercising dominion and control over the contraband. *United States v. Behanna,* 814 F.2d 1318, 1319 (9th Cir.1987), quoting *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir. 1985). The government asserts that defendant had constructive possession of cocaine because he "served as security, and as a lookout during transfer of the cocaine from the apartment complex to the ... Monte Carlo" and "transported the cocaine to a Denny's restaurant."

---

**4.** The government also contends that defendant acted as security during the transactions. No evidence supports this claim. No one testified as to any instance in which defendant actually played the strongarm. Defendant was present on only one of four occasions when cocaine was delivered. The bulk of the cocaine was delivered by *single* conspirators to multiple parties. This contradicts the government's theory that the *modus operendi* of the conspiracy was to have security along during each delivery.

The government also contends that defendant assisted in the transportation of cocaine. However, defendant never handled the cocaine or drove automobiles containing cocaine.

Similarly, placing and receiving calls at a public telephones does not prove involvement in criminal activity. Police did not trace any of defendant's calls and were unable to determine whether Guarin or defendant wore the telephone pager. There may have been any number of legitimate reasons why defendant used a public telephone, even if Guarin's calls were made in furtherance of illegal activity.

**5.** Unlike Lopez, defendant said nothing which could be construed as an admission of knowledge of or participation in the conspiracy. Unlike evidence against Cloughessy, evidence against defendant is consistent with innocent activity.

Even if defendant acted as security and lookout (propositions we have already rejected) these actions do not indicate that he had dominion or control over cocaine. Defendant never handled any boxes or packages containing cocaine or transported cocaine himself (he was a passenger on the trip to Denny's). Defendant did not own or lease any of the apartments or automobiles in which cocaine was found. No cocaine was found in the apartment in which defendant was arrested. *Cf. Rodriguez,* 761 F.2d 1339 (conviction reversed where defendant arrested in room containing counterfeiting equipment); *United States v. Soto,* 716 F.2d 989 (2d Cir.1983) (conviction reversed where defendant arrested in apartment that served as drug laboratory). Defendant's fingerprints were not found on contraband or any paraphernalia (e.g., telephone pagers) used in the operation.

■ Even if defendant's presence in the Duster raised a presumption of control over cocaine inside the car, the government offered no evidence showing that defendant knew there was cocaine in the car. Defendant's alleged lookout activities do not establish that he knew the boxes contained cocaine. The boxes might just as well have contained illegal firearms or something legal. There was no evidence that cocaine was discussed in defendant's presence.

The government did not present evidence sufficient to sustain defendant's conviction for possession of cocaine with intent to distribute. Accordingly, we reverse defendant's conviction for possession with intent to distribute narcotics.

### Conclusion

The government failed to produce evidence which would enable a jury to determine beyond a reasonable doubt that defendant was involved in a conspiracy to possess cocaine with intent to distribute. No evidence supports the jury's conclusion that defendant possessed cocaine. We reverse both convictions.

REVERSED.