**UNITED STATES of America, Plaintiff,**

v.

**Franz Bernhard MAGDALENER, Jay Pinder, et al., Defendants.**

**No. CR 87–8–H–CCL.**

United States District Court,
D. Montana,
Helena Division.

Aug. 27, 1987.

James E. Seykora, Asst. U.S. Atty., Billings, Mont., for plaintiff.

Philip G. Butler, Jr., West Palm Beach, Fla., Robert J. Sewell, Jr., Helena, Mont., for defendants.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

Before the court is Defendant Jay Pinder's motion for new trial. Defendant asserts that during his trial, the court erred in several respects requiring a new trial. Those errors include: (1) denying Defendant's motion for judgment of acquittal based on insufficiency of the evidence, (2) permitting certain testimony by the government's informant witness, Terry Toepper; (3) admitting into evidence co-conspirator statements; (4) limiting cross-examination of Terry Toepper; (5) refusing Defendant's requested instructions on alibi and "mere presence;" and (6) ruling against Defen-

dant on the various motions for mistrial and objections made during the trial.

### I. Sufficiency of the Evidence

■ Defendant argues that the evidence in this case "is insufficient to prove beyond a reasonable doubt that Jay Pinder knowingly entered a conspiracy to distribute cocaine in the District of Montana." Defendant argues, therefore, that the court erred by denying Defendant's motions for acquittal.

> A conviction will be upheld if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each essential element of the crime charged. *United States v. Sharif,* 817 F.2d 1375, 1377 (9th Cir.1987), quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*United States v. Penagos,* 823 F.2d 346, 347 (9th Cir.1987). The essential elements of a conspiracy are:

> (1) an agreement to accomplish an illegal objective, (2) coupled with one or more acts in furtherance of the illegal purpose, and (3) the requisite intent necessary to commit the underlying substantive offense. *United States v. Indelicato,* 800 F.2d 1482, 1483 (9th Cir.1986).

*Id.* at 348. Defendant argues that the "illegal purpose" in this case "was the distribution of cocaine in Montana." Defendant's Memorandum of Law at 2. Defendant adds (1) that the government must then prove that Defendant was a member of the conspiracy; (2) that his connection was knowledgeable; and (3) that he had the specific intent to further the object of the conspiracy. *Id.*

In support of this position Defendant cites the Ninth Circuit's opinion in *United States v. Federico,* 658 F.2d 1337 (1981). In that case the court wrote, "The defendant's connection to the conspiracy must be shown to be knowledgeable, *i.e.,* the government must prove beyond a reasonable doubt that the defendant knew of his connection to the charged conspiracy." *Id.* at 1344. In *Federico* the Ninth Circuit

upheld a drug supplier's conviction on a drug conspiracy charge even though he had no notion of how the subsequent sale was to be completed.

Defendant's thesis appears to be that to be convicted of conspiracy to distribute cocaine, the government must prove that Defendant knew that he had entered a conspiracy to find buyers for cocaine in Montana and transport cocaine to Montana.

The opinion contains no mention of any bit of evidence tending to show that the supplier, Federico knew what the seller intended to do with the 440 grams of cocaine transferred. While the Ninth Circuit held that "the government must prove ... that the defendant knew of his connection to the charged conspiracy," *Federico* at 1344, it is not necessary to prove that the defendant knew the precise details of how, when, and where the seller intended to distribute the drugs. Thus I cannot accept Defendant's argument that his conviction must be overturned because he was unaware of a conspiracy to distribute cocaine in Montana.

This conclusion is consistent with a number of Ninth Circuit cases addressing the sufficiency of the evidence in conspiracy convictions. These cases indicate that a defendant's conviction will be reversed if the government is unable to prove the accused knew of a conspiracy at all—but will not be reversed merely because the defendant was not privy to every detail of the operation. "[T]he government may not convict a defendant merely by showing his connection, albeit unwitting, to the unlawful agreement. Rather, the government must also prove beyond a reasonable doubt that the defendant *knew* of his connection to the conspiracy charged by the government." *United States v. Smith*, 609 F.2d 1294, 1299 (9th Cir.1979). The question becomes, when is a defendant's connection to a conspiracy "knowing," and when is that connection merely "unwitting?"

In *United States v. Penagos*, 823 F.2d 346 (9th Cir.1987) the court did overturn a drug conspiracy conviction for lack of evidence. The government alleged Penagos acted as a lookout while the principal con-spirators loaded boxes of cocaine into an automobile. After reviewing the evidence the Ninth Circuit concluded that Penagos' actions were consistent with one who was totally unaware that the conspirators were transporting cocaine. Thus the court held a rational jury could not have found Penagos was a lookout or committed any act in furtherance of the conspiracy.

Generally the Ninth Circuit has upheld conspiracy convictions upon minimal evidence of a defendant's knowing connection with a conspiracy. For example, where two co-conspirators challenged the sufficiency of the evidence supporting their convictions, the Ninth Circuit held that one conspirator's acts as a lookout and evidence tending to show that he wrote figures on a note pad which could have been price and quantity quotations for a drug sale were sufficient to allow a jury to conclude that the government had proved the defendant's knowing participation in, and each of the elements of, the conspiracy. The court reached the same conclusion as to his co-defendant upon a showing that he had met with co-conspirators, under a false name, rented a room across the street from the codefendants, and under a false name asked the desk clerk in his codefendant's hotel for messages. *United States v. Fleishman*, 684 F.2d 1329, 1341 (9th Cir.1982). Where a co-conspirator stated the defendant was his source of drugs and other evidence showed the defendant was the source of drugs, sufficient evidence exists to establish a conspiracy. *United States v. Stewart*, 770 F.2d 825 (9th Cir.1985).

Here the record indicates that the government produced sufficient evidence to allow a jury to conclude that Defendant's connection to the conspiracy was knowing. This case is unlike *Penagos* where there was no evidence inconsistent with defendant's assertion that he was unaware of what the co-conspirators were doing. The government's evidence, if believed, is inconsistent with an assertion that Defendant was an unwitting participant in, or witness to, an illegal enterprise.[1]

---

**1.** Defendant makes much of the Ninth Circuit's   opinion in *United States v. Spanos*, 462 F.2d

In light of the foregoing, Defendant's motion for a new trial based on insufficiency of the evidence is DENIED.

## II.  *Testimony by Terry Toepper*

Defendant moved for a new trial based on perceived error resulting from Terry Toepper's testimony concerning the events at the Inlet Bar.  Defendant did not brief this issue and, therefore, Defendant's motion for a new trial on this ground is DENIED.

## III.  *Co-conspirator Declarations*

■ Defendant argues that the court erred by permitting codefendant Franz Magdalener to testify as to statements made to him by another codefendant, Rusty Ward.  "The specific statement was by Franz Magdalener that several days after the events of December 12, 1986 Rusty Ward told Franz Magdalener that the cocaine at the Inlet Bar came from Jay Pinder."  Defendant presents three arguments in support of this position: "[1] the court relied on other co-conspirator declarations in determining whether the co-conspirator declarations at issue were admissible; [2] there was insufficient independent evidence to demonstrate that Jay Pinder was a member of the conspiracy; and [3] the statement attributed to Rusty Ward was not 'in furtherance' of the conspiracy."

A statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."  Fed.R.Evid. 801(d)(2)(E).  The United States Supreme Court recently examined questions nearly identical to those presented here and held that "a co-conspirator's statements [may] themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."  *Bourjaily v. United States*, 483 U.S. 171, 180, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).  The court also held that Fed.R.Evid. 104 "on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege" when considering "the preliminary factual determination relevant to Rule 801(d)(2)(E)."  *Id.* 483 U.S. at 178, 107 S.Ct. at 2780.  The Supreme Court's holding in *Bourjaily* is adversely dispositive of Defendant's first two arguments concerning co-conspirator statements.  There remains only Defendant's assertion that the Rule 801(d)(2)(E) hearsay exclusion is inapplicable because Rusty Ward's statement to Franz Magdalener were not in furtherance of the conspiracy.

Defendant correctly argues that to be admissible the statements must be in furtherance of the conspiracy.  Defendant then asserts that the statements in issue did not further the objectives of the conspiracy because "[t]he statements by Rusty Ward were in no way intended to induce Magdalener to deal with the conspirators or in any way served to achieve the conspirators common goal," "[n]or was there any indication that Jay Pinder was to have any further role in the conspiracy."

Defendant states he "relies squarely" on the Ninth Circuit's holding in *United States v. Bibbero*, 749 F.2d 581 (9th Cir. 1984).  *Bibbero* held that "mere conversation between co-conspirators is not admissible" under Rule 801(d)(2)(E).  *Id.* at 583–84.  Thus the court held that under the facts found in *Bibbero*, hearsay testimony concerning the declarant's statement about the marijuana's ownership was improperly admitted.

In light of the Ninth Circuit's more recent holding in *United States v. Andersson*, I find Defendant's argument unper-

1012 (9th Cir.1972).  In *Spanos,* the court wrote, "What happened here was an abuse of the conspiracy charge...."  The court appeared to chastise the government for prosecuting Spanos for conspiracy in the Central District of California when the evidence showed only an unlawful drug sale in the Northern District of California.  Here Defendant argues the government could have charged him with selling cocaine in the

Southern District of Florida, but abused the conspiracy charge by charging Defendant with conspiracy and prosecuting him in Montana.  Defendant misapplies *Spanos.*  Spanos' conviction was overturned because the government failed to make a *prima facie* showing the charged conspiracy by proof "aliunde."  *Spanos,* 462 F.2d at 1016.

suasive. 813 F.2d 1450 (9th Cir.1987). In *Andersson* the court wrote

> In determining whether a statement tends to further the objective of the conspiracy, the statement should be examined in the context in which it is made. Specifically, we have held that "statements made to keep a conspirator abreast of a co-conspirator's activities, or to induce continued participation in a conspiracy, or to allay the fears of a co-conspirator are in furtherance of a conspiracy."

*Id.* at 15 (citation omitted).

Ward told Magdalener that the kilo of cocaine Ward acquired December 12, 1986 had come from Jay Pinder. This statement was uttered as Ward and Magdalener discussed profit from and distribution of the kilo in question. If Magdalener intended to purchase more cocaine with the proceeds of the first kilo, he undoubtedly would be interested in knowing the source of the first kilo and whether he could expect more cocaine from that source in the future. Ward's response to Magdalener's question on the source of the cocaine is clearly in furtherance of the ongoing conspiracy and Ward's statement was made to keep Magdalener abreast of the conspirator's source of cocaine.

It appearing that Defendant's arguments that the court erred by admitting co-conspirators' statements are without merit, Defendant's motion for a new trial on this ground is DENIED.

### IV. *Jury Instructions*

#### A. Alibi Instruction.

Defendant assigns error to the court's refusal to give Defendant's requested alibi instruction. Defendant argues that where there is evidence to support an alibi defense, it is error to refuse to give the proffered instruction.

On April 24, 1987, the court issued its standard pretrial scheduling order setting forth deadlines for filing certain documents including proposed jury instructions. That order required that no later than May 26, 1987, the parties shall file proposed jury instructions with the clerk and the court. Defendant failed to file any written requests for jury instructions. Defendant first requested his alibi instruction on the morning the trial was concluded, Friday, June 12, in a jury instruction conference held in chambers.

Defendant offered the Ninth Circuit pattern instruction on the alibi defense. *Manual of Model Jury Instructions for the Ninth Circuit,* § 6.01 at 90 (1985). That instruction provides:

> The government has charged that defendant [describe conduct charged]. Witnesses have testified that [alibi testimony]. You must decide what the facts are. If you have a reasonable doubt that the defendant committed the act charged after you have considered all of the evidence, you must find the defendant not guilty.

I denied Defendant's request for this instruction. For the following reasons I adhere to my initial decision, and Defendant's motion for a new trial based on the court's refusal to give an alibi instruction is denied.

I have examined each of the cases Defendant cites in support of his motion and have found none compelling under these facts. Defendant cites the Ninth Circuit's holding in *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir.1977) for the proposition that it is error to refuse a defendant's alibi instruction where the defendant produced evidence to support the instruction. In *Ragghianti* the Ninth Circuit reversed the defendant's conviction of aiding and abetting a bank robbery because the trial court refused to give a standard alibi instruction. Ragghianti was charged with aiding and abetting the robbery by driving the getaway car. The Ninth Circuit based its opinion on a quote from a case charging the defendant with accepting a bribe. In *Ragghianti* the court wrote:

> The general rule as to the need for the alibi instruction as discussed in *United States v. Marcus*, 166 F.2d 497, 503–04 (3rd Cir.1948), is right on point. There the court stated:

"By the weight of authority it is held that the instructions on the presumption of innocence of the accused, and of the necessity of fastening every necessary element of the crime charged upon the accused beyond a reasonable doubt, are not enough in cases involving the necessary presence of the accused at a particular time and place, when the accused produces testimony that he was elsewhere at the time. If the accused requests an instruction as to the burden of proof on his alibi, an instruction on the subject must be given so as to acquaint the jury with the law that the government's burden of proof covers the defense of alibi, as well as all other phases of the case. Proof beyond a reasonable doubt as to the alibi never shifts to the accused who offers it, and if the jury's consideration of the alibi testimony leaves in the jury's mind a reasonable doubt as to the presence of the accused, then the government has not proved the guilt of the accused beyond a reasonable doubt."

*Ragghianti* at 1379 (quoting *United States v. Marcus*).

The Ninth Circuit held that typical jury instructions on presumption of innocence and burden of proof are insufficient "in cases involving the necessary presence of the accused at a particular time and place, when the accused produces testimony that he was elsewhere at the time." *Id.* Ragghianti and Marcus were charged with crimes for which presence is necessary—driving a getaway car and accepting a bribe, respectively. Such cases are of little value here where Defendant was charged with conspiracy for which presence at the drug transfer is unnecessary.[2]

■ The Ninth Circuit cases Defendant cites are either unpersuasive or off the mark. Other cases, however, are instruc-

tive here. In dictum the Ninth Circuit indicated that an alibi instruction may not be necessary in conspiracy cases where presence is not necessary. *United States v. Lustig*, 555 F.2d 737, 751 (9th Cir.1977) ("[E]ven if Lustig had presented evidence of an alibi, it would not have rebutted the government's evidence. Presence need not be shown to prove conspiracy."). Other circuits have held similarly. *United States v. Anderson*, 654 F.2d 1264, 1271 (8th Cir. 1981) ("Because it was unnecessary for the government to prove [the defendant's] presence at the [drug] sales [to support a conspiracy conviction], the alibi defense was not supported by the law, and no instruction concerning it was required."); *United States v. Guillette*, 547 F.2d 743, 752 (2d Cir.1976) ("[S]ince the offense charged was conspiracy, the government was not required to prove appellants' attendance at the May 8 meeting beyond a reasonable doubt and thus the trial court did not err in refusing to so instruct the jury. The alibi, if believed by the jury, established no more than that appellants did not participate in one of numerous overt acts of the conspiracy.") *United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir.1976) ("[W]hen the defendant's presence at the scene of the crime has not been an element of the offense which the government was required to prove, the courts have held that failure to provide an alibi instruction does not require reversal."). The conclusion to be drawn from these cases is that an alibi instruction is unnecessary in a conspiracy charge where the defendant's connection with the conspiracy includes more than one act and the defendant's alibi defense only covers one of the charged acts.

■ Defendant first requested an alibi instruction in chambers shortly before 9:00 a.m. on the final day of trial, June 12, 1987. The jury was scheduled to assemble at 9:00

---

**2.** Defendant also cites the Ninth Circuit's holding in *United States v. Hoke*, 610 F.2d 678 (9th Cir.1980) to support his argument that the trial court must give an alibi instruction where warranted. In *Hoke* the Ninth Circuit reversed Hoke's conviction of bank larceny, but the reversal was not due to the trial court's failure to

give an alibi instruction. *Hoke* was reversed because the trial court failed to give an instruction explaining that "[f]ailure to establish an alibi is not evidence of guilt." *Hoke* at 679. *Accord United States v. Burse*, 531 F.2d 1151 (2d Cir.1976).

a.m. Had Defendant requested an alibi instruction on or before May 26, 1987, as ordered in the court's pretrial scheduling order, the court would have had ample time to consider the instruction and modify it, if necessary, during the course of the trial. Had Defendant even mentioned an alibi instruction in the instructions conference held the previous evening, an adequate instruction could have been prepared by Friday morning. Having failed to submit a timely proposed instruction, Defendant cannot now argue that the court's refusal to give an inadequate instruction was error.

Defendant's motion for a new trial based on the court's failure to give an alibi instruction is DENIED.

## B. "Mere Presence" Instruction.

Defendant next contends that it was error to deny Defendant's request for a "mere presence" instruction. Finding no analogous Ninth Circuit instruction, Defendant offered a portion of the Eleventh Circuit's conspiracy instruction which addresses a defendant's mere presence at a scene where others are conspiring. The instruction provides:

[M]ere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

*Pattern Jury Instructions Criminal Cases*, § 62 at 213–14 (Eleventh Circuit 1985 ed.). Defendant argues the Ninth Circuit's case law is in accord and the court erred by refusing Defendant's requested instruction.

■ I agree that simple association with conspirators does not make one a co-conspirator. However, as I stated in the jury instruction conference, I believe Defendant's requested instruction is adequately covered elsewhere in the charge. I believe the following instructions given to the jury

are the substantive equivalent of Defendant's requested "mere presence" instruction.

It is not enough that they simply met, discussed matters of common interest, acted in similar ways or perhaps helped one another. What the evidence must show beyond a reasonable doubt, in order to prove that a conspiracy existed, is that the members in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan. You must find beyond a reasonable doubt that there was a joint plan to engage in the distribution of cocaine.

*Jury Instructions* at 13.

[T]o find against either of the defendants, you must find that the individual defendants joined the conspiracy and did so knowing of the unlawful plan and intending to help carry it out.

*Id.* at 14.

The key element of proof is that showing as to any specific co-conspirator that he or she knew, or had reason to know of the participation of other[s] in the illegal plan, and that he or she knew, or had reason to know that the benefits to be derived from the operation were probably dependant upon the success of the entire operation.

*Id.* at 15.

■ The jury, considering these instructions, could not reach a guilty verdict simply because Defendant was associated with, or in the presence of, the conspirators. Since the substance of Defendant's requested instruction is found within the instructions given, Defendant's motion for a new trial based on the court's refusal to give a mere presence instruction is DENIED.

## V. *Cross–Examination of Terry Toepper*

■ Defendant argues that the court erred in restricting the cross-examination of Terry Toepper, the government's informant witness. Upon the government's re-

quest, the court disallowed further testimony concerning Toepper's testimony that he and his family were intimidated by Defendant. At a side-bar conference, government counsel stated that he believed if this line of questioning continued, Toepper might state "that Mr. Pinder's organizations have been known to kill people in the past." Counsel stated such a statement might result in a mistrial.

Defendant argues that the court's ruling was error on several grounds: (1) the government's fear of Toepper's possible response to further cross-examination was speculative and the government's concerns could have been addressed by less restrictive means; (2) further cross-examination would have led to relevant evidence regarding prior inconsistent statements, coloration of Toepper's testimony by the government's suggestions, and Toepper's immunity from prosecution on charges stemming from possible parole violations; and (3) Defendant's sixth amendment rights were unconstitutionally curtailed. Defendant, therefore, requests a new trial.

The Ninth Circuit examined the scope of a criminal defendant's right of cross-examination, and the court's discretion to limit cross-examination, in *Skinner v. Cardwell*, 564 F.2d 1381 (9th Cir.1977). There the Ninth Circuit recognized the sixth amendment right of confrontation "is embodied largely by the right to cross-examine adverse witnesses" and if that right is denied, "constitutional error exists without the need to show actual prejudice. *Id.* at 1388. The court then added, "However, the defendant does not have an unrestricted right to cross-examine adverse witnesses on any matters desired. Initially the cross-examination must be shown to be relevant. The determination of relevancy is within the discretion of the trial court." *Id.*

Where a court limited impeachment examination the Ninth Circuit held:

> The test for whether cross-examination about a relevant topic was effective, i.e., whether the trial court had abused its discretion, is whether the jury is otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue. When the refused cross-examination re-

lates to impeachment evidence, we look to see whether the jury had sufficient information to appraise the bias and motives of the witness.

*Skinner* at 1389.

The Ninth Circuit has also held that a trial court is within its discretion to limit cross-examination of the government's witnesses when "[t]he cross-examinations were vigorous and sustained, satisfying the demands of the confrontation clause." *United States v. Sterling*, 742 F.2d 521, 527 (9th Cir.1984). In this case counsel's cross-examination consumed approximately fifty pages of transcript and delved into numerous topics including: (1) Toepper's immunity from prosecution, (2) Toepper's lies to the FBI; (3) Toepper's prior conviction; (4) the events at the Inlet Bar on December 12, 1986 allegedly connecting Defendant to the drug transaction; (5) Toepper's meetings with defense counsel; and (6) the government's reaction to Defendant's meetings with defense counsel and pressure applied on Toepper to testify as the government wanted.

The jury was sufficiently informed of Toepper's possible bias and motives and counsel was afforded an opportunity for vigorous cross-examination. I cannot conclude that it was error to restrict further cross-examination when it was possible that Toepper may have poisoned the proceedings by stating that Defendant's "organization" had been known to kill people. Defendant's motion for a new trial based on the court's ruling restricting cross-examination is DENIED.

### VI. *Conclusion*

Having reviewed each of Defendant's arguments in support of his motion for a new trial and having found them to be unpersuasive,

IT IS HEREBY ORDERED Defendant's motion for a new trial is DENIED and the previously scheduled sentencing shall take place as ordered.