**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Habib Georges MAKHLOUTA,
Defendant-Appellant.**

**No. 85–5065.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1986.

Decided June 2, 1986.

Barbara C. Stergis, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Before WALLACE, FARRIS, and NORRIS, Circuit Judges.

WALLACE, Circuit Judge:

Makhlouta appeals his conviction on two counts of possession with intent to distribute a controlled substance and two counts of distribution of a controlled substance, all in violation of 21 U.S.C. § 841(a)(1). Makhlouta argues that the district court erred by admitting certain testimony, by allowing testimony on redirect examination that exceeded the scope of the cross-examination, by permitting two instances of prosecutorial misconduct in closing argument, and by refusing to give requested jury instructions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

In September 1984, Makhlouta was arrested after delivering approximately 726 grams of heroin to undercover Federal Bureau of Investigation (FBI) agents Miller and Dunbar. The arrest followed an investigation that had extended over several months. Makhlouta had previously delivered a lesser quantity of cocaine to agent Miller.

At trial on four counts, Makhlouta did not deny possession and distribution of the

heroin and cocaine. Instead, he asserted a defense of entrapment. Makhlouta was convicted on all four counts.

## II

Makhlouta argues that the district judge improperly admitted hearsay testimony when he permitted Miller to testify, over objection, that he first met Makhlouta after an informant, Khawan, told Miller that Makhlouta and an associate were looking for a buyer of large quantities of cocaine. The district judge correctly determined that Khawan's statement was not hearsay because it was offered not to prove the truth of the matter asserted but rather to show Miller's state of mind when he began investigating Makhlouta. *See* Fed.R.Evid. 801(c); *McCormick's Handbook of the Law of Evidence* § 249, at 733–34 (3d ed. 1984).

It does not follow, however, that the testimony was properly admissible to show Miller's state of mind. Only evidence that is relevant is admissible. Fed.R.Evid. 402. The district court evidently acted on the assumption that Miller's state of mind was relevant to Makhlouta's asserted defense of entrapment. But under the law of entrapment, "it is not the state of mind of the government agent that is important; ... it is the 'predisposition of the defendant' to commit the offense ... that counts." *United States v. McClain*, 531 F.2d 431, 435 (9th Cir.), *cert. denied*, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976), *quoting United States v. Russell*, 411 U.S. 423, 427, 93 S.Ct. 1637, 1640, 36 L.Ed.2d 366 (1973); *see United States v. So*, 755 F.2d 1350, 1354 (9th Cir.1985). Therefore, Miller's testimony concerning Khawan's statement was irrelevant.

Although not raised as an issue on appeal, an objection was interposed during trial by Makhlouta on relevancy grounds. Even if we consider it now, however, we would have no difficulty finding that the error was more probably than not harmless. *See* Fed.R.Crim.P. 52(a); *Burgess v. Premier Corp.*, 727 F.2d 826, 836 (9th Cir. 1984). The essential elements of the testimony were elsewhere properly admitted in evidence: Khawan himself testified in detail that he contacted Miller after Makhlouta and an associate told Khawan that they were looking for a buyer of large quantities of cocaine. In addition, ample other evidence supported the jury's conclusion that Makhlouta was predisposed to commit the offenses charged. *Cf. United States v. Cowley*, 720 F.2d 1037, 1045 (9th Cir.1983) (error in admitting evidence harmless where ample other evidence supports jury's conclusion), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984); *United States v. Rangel*, 534 F.2d 147, 149 (9th Cir.) (same), *cert. denied*, 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976).

## III

Makhlouta next argues that the district court erred by permitting testimony on redirect examination that exceeded the scope of the cross-examination. We apply the abuse of discretion standard in reviewing a district court's decision regarding the permissible scope of questioning. *United States v. Palmer*, 536 F.2d 1278, 1282–83 (9th Cir.1976).

On cross-examination of FBI agent Dunbar, Makhlouta's counsel elicited testimony that Miller and Dunbar had suggested to Makhlouta several possible public locations for the heroin transaction planned for the following day. As Makhlouta points out, this testimony arguably supported the defense of entrapment by suggesting the degree of control exercised by the FBI agents. To rebut such an inference, the government on redirect examination asked Dunbar why Makhlouta and the agents had not instead discussed one specific location for the transaction. Dunbar responded that it would be extremely dangerous to designate in advance a specific location where the agents would have a substantial amount of money.

The district court did not abuse its discretion in permitting this redirect examination. It fell comfortably within the scope of the cross-examination, which had explored the discussion between Makhlouta and the

agents regarding the location of the planned transaction. The redirect examination was also relevant, since it bore on the degree of control exercised by the agents.

## IV

█ Makhlouta also argues that the district court committed reversible error by permitting an improper and inflammatory comment by the government in the rebuttal stage of closing argument. Responding to references by defense counsel to Makhlouta's family, the prosecutor stated: "Now the defense has tried to portray the defendant as a family man. What kind of a family man stays out all night? What kind of family man gives out heroin samples and what kind of family man sells heroin that kids inject?" Makhlouta objected to the reference to "heroin that kids inject." We review the district court's decision to permit this comment under the abuse of discretion standard. *United States v. Patel*, 762 F.2d 784, 794 (9th Cir.1985) (*Patel*); *United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985).

We agree that the government's comment was an ill-chosen response to the defense argument. Our review of the record, however, satisfies us that this single reference, "in the circumstances of the trial as a whole, [was not] so prejudicial that [it] likely influenced the jury adversely to the defendant and deprived the defendant of a fair trial." *Patel*, 762 F.2d at 795. Therefore, the district court did not commit reversible error in allowing the comment. *Cf. United States v. Perez*, 491 F.2d 167, 174 (9th Cir.) (prosecutor's argument to jury that "[y]ou can imagine the quantity of heroin involved in this case that is taken out of the hands of little children in this town by the work of these narcotic agents" did not constitute reversible error), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974).

## V

█ Makhlouta further contends that the district court improperly permitted the government in closing argument to comment on Makhlouta's partial silence following arrest and *Miranda* warnings. Makhlouta concedes that no objection to this comment was made at trial. We therefore review the prosecutor's conduct for plain error. *United States v. Lopez*, 575 F.2d 681, 684–85 (9th Cir.1978).

The government questioned Dunbar about his post-arrest interrogation of Makhlouta:

Q What did the defendant say?

A He advised that the substance he had given to Special Agent Miller and myself earlier in the day he knew in fact was heroin. He knew it was wrong; a violation to be doing this. However, he didn't anticipate he would get caught. He wouldn't say where he had gotten the heroin from earlier in the day, and basically that's—

Later, the government employed this confession in cross-examining Makhlouta with respect to his defense of entrapment:

Q And in your confession you didn't say you felt pressured to do this sale, did you?

A No, [agent Miller] did force me.

Q Is it your testimony that [agent Miller] forced you to do the sale on the 22nd?

A Yes.

Q And you didn't say that in your confession, did you?

A What do you mean? I don't understand.

Q When you gave your confession to Agent Dunbar, you didn't say anything about being pressured to make the sale, did you?

A He left for me a paper and I was so extremely nervous, my mind was not—I had to just shake my head and say yeah, yeah, yeah.

Then, in closing argument, the prosecutor emphasized the inconsistency between Makhlouta's post-arrest statements and his entrapment defense at trial. After reciting

extensive evidence that Makhlouta was predisposed to commit the criminal activity, the prosecutor stated, "And all of [this evidence] is consistent with his confession when he said, 'I knew it was wrong but I didn't think I'd get caught.'" Further in the context of demonstrating Makhlouta's predisposition, the prosecutor stated:

Finally, remember the case—or right after the arrest the defendant confessed and in that confession he did not say that he had been set up. He did not say he felt he'd been forced to do it. He didn't say he'd done it out of fear, and he didn't blame it on a drinking problem.

And in fact on the stand the defendant said, "Well, I got into this because I wanted money and my kids on TV."

■■■■ When a defendant has maintained silence after receiving *Miranda* warnings, the constraints of due process do not permit the prosecutor to use this silence to impeach an exculpatory story told for the first time at trial. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (*Doyle*). Where the defendant has voluntarily spoken after receiving *Miranda* warnings, however, *Doyle* does not bar "cross-examination that merely inquires into prior inconsistent statements.... As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (per curiam) (*Charles*). As our court has interpreted *Charles,* once a defendant makes post-arrest statements that "'may *arguably* be inconsistent with the trial story,'" he has raised a question of credibility. *United States v. Ochoa-Sanchez,* 676 F.2d 1283, 1286 (9th Cir.) (emphasis added) (*Ochoa-Sanchez*), cert. denied, 459 U.S.

911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982), *quoting Grieco v. Hall,* 641 F.2d 1029, 1034 (1st Cir.1981) (*Grieco*); *accord Hockenbury v. Sowders,* 718 F.2d 155, 158 (6th Cir.1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); *United States v. Schultz,* 698 F.2d 365, 367 (8th Cir.1983).[1] The government, to provide all relevant evidence bearing on credibility, "may probe all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details." *Ochoa-Sanchez,* 676 F.2d at 1286.

Makhlouta's post-arrest statements meet the *Ochoa-Sanchez* requirement of being arguably inconsistent with the defense of entrapment asserted at trial. Makhlouta's post-arrest statements address the subject matter of why he sold heroin. These statements do more than neglect to suggest the defense of entrapment. They in fact offer a single explanation of his criminal activity—that he sold heroin, even though he knew it was illegal, because "he didn't anticipate he would get caught"—that is arguably inconsistent with the entrapment defense since it is evidence of a criminal predisposition. *See United States v. Reynoso-Ulloa,* 548 F.2d 1329, 1336 (9th Cir. 1977) (lack of reluctance to commit crime is evidence of criminal predisposition), cert. denied, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978); *id.* at 1338 (defense of entrapment "is unavailable to a defendant who, motivated by greed and unconcerned about breaking the law, readily accepts a propitious opportunity to commit an offense").[2]

Under *Ochoa-Sanchez,* the government could probe this arguable inconsistency by "'inquir[ing] into what was not said at

1. The dissent claims that our court's adoption in *Ochoa-Sanchez* of the standard of arguable inconsistency "was unnecessary to the holding because the inconsistency between the defendant's stories was clear." Dissenting op. at 1408 n. 3. Nowhere in *Ochoa-Sanchez,* however, do we state that the inconsistency was clear, nor is it evident that such was the case. Indeed, the dissenting judge in *Ochoa-Sanchez* expressly stated that there was no clear inconsistency. *Ochoa-Sanchez,* 676 F.2d at 1290 (Fletcher, J.,

dissenting). We therefore conclude that our adoption in *Ochoa-Sanchez* of the standard of arguable inconsistency was necessary to our holding.

2. It is thus plain that, contrary to the suggestion in the dissent, *see* dissenting op. at 1407, we do not rely on an inconsistency between Makhlouta's post-arrest silence and his assertion of the entrapment defense at trial.

arrest.' " 676 F.2d at 1286, *quoting Grieco*, 641 F.2d at 1034. Such inquiry does not run afoul of *Doyle*, since it is "not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Charles*, 447 U.S. at 409, 100 S.Ct. at 2182. Viewing the government's cross-examination and closing argument in context,[3] we conclude that they were properly designed to explore the arguable inconsistency between Makhlouta's post-arrest statements and his defense of entrapment. Accordingly, we see no plain error in the district court's failure to exclude the government's comment in closing argument concerning this inconsistency.

## VI

■ Finally, Makhlouta argues that the district court erred in refusing to give two proposed jury instructions on the issue of entrapment. A defendant is entitled to a jury instruction on "his theory of the case if it is supported by law and has some foundation in the evidence." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985) (*Echeverry*). The district court, however, may refuse a proposed instruction so long as the instructions given, viewed as a whole, cover that theory. *United States v. Kenny*, 645 F.2d 1323, 1337 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). We review the district court's formulation of instructions for an abuse of discretion. *Echeverry*, 759 F.2d at 1455.

■ As Makhlouta acknowledges, the court gave the general entrapment instruction that he requested. Makhlouta proposed two other instructions. The first stated that the defense of entrapment must be considered separately as to each count and provided an illustrative paragraph. The court gave the instruction but declined to give the accompanying illustration. The second proposed instruction stated that Makhlouta could not be convicted if he had

merely the predisposition to aid others in entering into narcotics transactions but did not himself have the predisposition to possess or distribute narcotics. The court did not give this instruction.

The district court's actions regarding these instructions fail to provide a basis for reversal. The illustrative paragraph in the first instruction was clearly superfluous. Moreover, the paragraph's use of Makhlouta's counts as examples could have confused the jury. The theory of the second instruction was adequately covered by the court's general instruction on entrapment, which specifically provided that predisposition "to commit crimes such as are charged" had to be proven beyond a reasonable doubt.

AFFIRMED.

NORRIS, Circuit Judge, dissenting:

I dissent. The prosecutor's allusion to "heroin that kids inject" and the redirect testimony of Agent Dunbar about the dangers of undercover drug dealing were both patently prejudicial. In addition, the district court plainly erred in permitting the government to exploit Makhlouta's silence on the subject of entrapment following his *Miranda* warnings.

## I

The majority characterizes the prosecutor's reference to "heroin that kids inject" as "an ill-chosen response to the defense argument." Majority Opinion at 1403. That puts it charitably. While the United States Attorney "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Here the prosecutor struck a foul blow. Her reference to "heroin that kids inject" was obviously designed to inflame the jurors' passions, not appeal to their sense of reason and fairness in deciding the only disputed issue at trial—whether Makhlouta

---

**3.** *See Charles*, 447 U.S. at 408, 100 S.Ct. at 2182 (prosecutor's questions should not be artificially parsed); *but see* dissenting op. at 1408–1409 (artificially parsing prosecutor's closing argument).

was entrapped into selling heroin to government agents. *See* B. Gershman, Prosecutorial Misconduct 10–19 (1985) ("One of the most pernicious ways to influence jurors is to appeal to them as parents of young children, suggesting that if the defendant is acquitted those children might be his next victims.").[1]

Similarly, Agent Dunbar's testimony that narcotics transactions are fraught with danger was both irrelevant and prejudicial. On cross-examination, Agent Dunbar was asked by defense counsel whether, on the day before the transaction, Makhlouta and the undercover agents had agreed on a site for the exchange of money and heroin. Agent Dunbar answered that no site was mentioned at that time. Reporter's Transcript (R.T.) at 172. On redirect, Dunbar was asked, over defense counsel's objection, why there was no agreement on a location the day before the deal was to go down. He answered that it would have been dangerous to the agents if others knew in advance that a large sum of money would be changing hands at a particular location. R.T. at 172A.

The point of the cross-examination of Agent Dunbar was to establish that the agents, not Makhlouta, were in control of the heroin transaction, a fact relevant to the entrapment defense. Dunbar's redirect testimony on the dangers of drug dealing was irrelevant to the issue of who controlled the transaction. It may have explained why the agents wanted to control the location, but it did not refute the point that the agents in fact controlled the transaction. In short, the dangers of undercover drug dealing are not germane to the issue whether the agents entrapped Makhlouta into selling them heroin. The prejudicial effect of Dunbar's testimony is obvious, especially in light of the uncontradicted evidence that Makhlouta possessed heroin and was trying to sell it to the agents.

The testimony created the risk that the jury's assessment of the evidence relevant to entrapment would be colored by the fear that Makhlouta, as a drug dealer, was prone to violence.

## II

In my view, the rule of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)—that the Due Process clause prohibits impeachment on the basis of a defendant's silence following *Miranda* warnings—bars prosecution use of Makhlouta's post-arrest silence on the subject of entrapment. The majority's reliance upon *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (*per curiam*), and *United States v. Ochoa-Sanchez,* 676 F.2d 1283 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982), is misplaced. Both *Anderson v. Charles* and *Ochoa-Sanchez* held that a defendant's trial testimony could be impeached by reference to prior inconsistent statements volunteered at the time of arrest. Those cases are clearly distinguishable because Makhlouta's post-arrest silence on the subject of entrapment does not constitute a prior statement that is inconsistent with his trial testimony.

In *Anderson v. Charles,* an incriminating piece of evidence against Charles, who was on trial for murder, was his possession of the victim's car at the time of his arrest. Charles testified at trial that he had stolen the car from a parking lot in another part of town. The Supreme Court held that Charles could be impeached on the basis of his contradictory post-arrest statement that he had stolen the car from a street corner. The Court reasoned that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements" and that the prosecutor made "no unfair use of silence, because a defendant who

---

1. *United States v. Perez,* 491 F.2d 167, 174 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974), is not to the contrary. In that case, the defendant did not object to prosecutorial comments concerning the selling of drugs to minors. Whether or not the prosecutor's reference to "heroin that kids inject" in the instant case rises to the level of plain error, it surely constitutes prejudicial error, given that Makhlouta's predisposition to commit the crime was the most hotly contested issue at trial.

voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." 447 U.S. at 408, 100 S.Ct. at 2182. The Court observed that the prosecutor's cross-examination of Charles was "not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Id.* at 409, 100 S.Ct. at 2182.

In sharp contrast to Charles, Makhlouta was impeached on the basis of his post-arrest silence on the subject of entrapment. While Charles volunteered a post-arrest statement on the subject of his possession of the murder victim's car, Makhlouta remained silent on the subject of entrapment. Thus *Doyle*, not *Charles*, controls this case. Here there was no prior inconsistent statement, only an impermissible use of silence.

The majority seems to find an inconsistency between raising the defense of entrapment at trial and failure to claim entrapment at the time of arrest. The logic of the majority's position eludes me. Entrapment is a legal concept, not a fact. A non-lawyer can hardly be expected to know enough about the intricacies of the law of entrapment to realize at the time of arrest that the defense might be available to him. Moreover, facts that form the basis for an entrapment defense might not fully emerge until after defense counsel investigates the case and completes pre-trial discovery. For example, a suspect might not know at the time of his arrest that persons he dealt with earlier in the game were government agents setting him up for a bust. Thus it is fanciful to posit, as the majority implicitly does, that one who was truly entrapped would have professed entrapment at the time of his arrest. Nor do I discern any inconsistency between Makhlouta's entrapment defense and his post-arrest utterance

that he did not expect to get caught. A person may be induced by government agents to commit a crime and think at the same time that he can get away with it. Indeed, it would be strange if someone could be induced into committing a crime while thinking he would be caught.[2] In sum, it makes no sense to say that Makhlouta's post-arrest silence on the subject of entrapment is inconsistent with his defense of entrapment.

The instant case cannot be distinguished from *Doyle* on any principled basis. In *Doyle*, the defendants claimed they had been framed by a "street person" who had volunteered to help the police catch drug pushers. 426 U.S. at 611–13, 96 S.Ct. at 2241–42. The prosecutor argued that this defense was inconsistent with the defendants' silence at the time of their arrest. Essentially, the prosecutor in *Doyle* made the same argument the prosecutor makes in the instant case, namely, that if the defendant truly believed the defense asserted at trial, he would have asserted it at the time of his arrest. In reversing the *Doyle* convictions, the Court noted that "post-arrest silence is insolubly ambiguous", and that it would be fundamentally unfair to penalize a defendant for his silence. *Id.* at 617–18, 96 S.Ct. at 2244–45. I submit that Makhlouta's post-arrest silence on entrapment is as "insolubly ambiguous" as the silence of the defendants in *Doyle*. Makhlouta's remark about not expecting to be caught changes nothing.

As with its reliance on *Anderson v. Charles*, the majority's reliance on *Ochoa-Sanchez* is misplaced. Ochoa-Sanchez was arrested when heroin was discovered in a car he was driving while attempting to cross the Mexican border. After receiving *Miranda* warnings, he said he had borrowed the car from a friend who lived in Santa Ana, that he had driven to Tijuana to visit a friend, and that he was returning.

**2.** *United States v. Reynoso-Ulloa,* 548 F.2d 1329 (9th Cir.1977), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978), offers no support for the majority's position. In *Reynoso-Ulloa*, "lack of reluctance to commit crime" was evidenced by the defendant's uncontroverted knowledge about drug smuggling and his initiation of heroin transactions. 548 F.2d at 1336. By contrast, Makhlouta's statement that he thought he would not get caught does not belie his "reluctance to commit crime" absent inducement by law enforcement authorities.

He testified at trial that he had hesitatingly accompanied two acquaintances to a bar and had assumed control over the car only a short time before. 676 F.2d at 1286–87. The prosecutor was permitted to cross-examine Ochoa-Sanchez on the discrepancies between the statements on the subject of how he came into possession of the car.

Our court held that *Anderson v. Charles* controlled rather than *Doyle* because Ochoa-Sanchez's statements, "taken as a whole, reveal an inconsistency." 676 F.2d at 1287 (citing *Anderson v. Charles*, 447 U.S. at 408–09, 100 S.Ct. at 2182–83).[3] Moreover, the *Ochoa-Sanchez* court did not "believe the prosecutor was attempting to draw meaning from the defendant's silence. The questioning clearly related specifically to details that defendant offered at trial but failed to reveal at the time of his arrest." *Id.*

The crucial inconsistency between post-arrest and trial statements, which the court found to exist in *Ochoa-Sanchez*, is lacking in the present case. Further, the prosecution in the instant case, unlike the prosecutor in *Ochoa-Sanchez*, was "attempting to draw meaning from the defendant's silence." The prosecutor emphasized Makhlouta's silence, not the supposed inconsistency between the post-arrest statement and the entrapment defense. For instance, in closing argument, the prosecutor stated in part:

Finally, remember the case—or right after the arrest the defendant confessed and in that confession he *did not* say that he'd been set up. He *did not* say he felt he'd been forced to do it. He *didn't* say he'd done it out of fear, and he *didn't* blame it on a drinking problem. R.T. at 4–89. The focus of these comments is on what Makhlouta did *not* say—his silence on the subject of entrapment after he received his *Miranda* warnings. Earlier in the closing argument, the prosecutor offered the following account:

Elias Khwan testified about a meeting at a restaurant in late August where the defendant said, "tell me, is Jay a narc? Is a cop? Is he FBI?" The testimony was not, "I want to get out of this altogether." It was, "Tell me if he is a cop."

And all of this is consistent with his confession when he said, "I knew it was wrong but I didn't think I'd get caught."

R.T. at 4–86–86. The prosecutor later argued that Makhlouta "was weighing the risk of getting caught as against the profit he could make. He was calculating all along. He took the risk and he did get caught." R.T. at 4–87. Here the prosecutor was properly attempting to use trial testimony to shed light on Makhlouta's post-arrest statement. The prosecutor then addressed several other matters before dealing with Makhlouta's post-arrest

---

**3.** The majority claims that *Ochoa-Sanchez* set out the standard of *arguable* inconsistency, but that language in *Ochoa-Sanchez* was unnecessary to the holding because the inconsistency between the defendant's stories was clear. The *Ochoa-Sanchez* court noted that the defendant's trial version of his adventures was "quite different from the version he proposed to agent Murray upon his arrest." 676 F.2d at 1286. The court then noted that there were *other* portions of defendant's trial testimony that "arguably are inconsistent with his post-arrest statements, but they need not be described in detail." 676 F.2d at 1287. This language was unnecessary to the holding. The word "arguable" also cropped up as part of a quote from a First Circuit case, *Grieco v. Hall,* 641 F.2d 1029, 1034 (1st Cir. 1981), a case in which the inconsistency was quite clear. Therefore, I believe that this circuit has *not yet determined what level* of inconsistency is necessary to bring a case within the exception to the *Doyle* rule carved out by *Ander-*

*son v. Charles.* In a case involving an error that was objected to at trial, I would favor a rule requiring a clear inconsistency before allowing a prosecutor to impeach the defendant with his post-arrest silence. Such a rule would both protect a defendant's Fifth and Fourteenth Amendment rights, as well as facilitate judicial administration. *See* Note, *Protecting* Doyle *Rights After* Anderson v. Charles: *The Problem of Partial Silence,* 69 Va.L.Rev. 155, 176 (1983). I recognize that in the instant case we must review for plain error because no objection was interposed at trial to the government's use of Makhlouta's silence. Thus, even if this court required a clear inconsistency to invoke *Anderson v. Charles,* rather than *Doyle,* in this case the plain error rule compels us functionally to review for arguable inconsistency. Nevertheless, I emphasize that future cases involving errors objected to at trial should not be bound by the arguable inconsistency test endorsed by the majority in this case.

silence. R.T. at 4–89. The point of this reference to Makhlouta's silence was that it supposedly raised an independent inference that he was predisposed to commit the crime. Thus, the prosecutor was trying to exploit a perceived conflict between Makhlouta's post-arrest silence and his trial defense of entrapment, not between his post-arrest statement on not getting caught and the entrapment defense.[4] Read in context, the prosecutor's closing argument clearly ran afoul of *Doyle*.

I believe that the error complained of here is both obvious and substantial. Makhlouta's right to remain silent was seriously compromised. Our court has held that a prosecutor's comment on post-arrest silence in contravention of *Doyle* constitutes plain error that is reviewable on appeal even absent timely objection. *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir.1978). I would reverse the conviction. Makhlouta is entitled to a new trial.

4. The majority alludes to the Supreme Court's admonition against bifurcating questions concerning prior inconsistent statements from questions concerning the defendant's failure to tell the arresting officers the story recounted at trial. *See Charles,* 447 U.S. at 408, 100 S.Ct. at 2182. But in *Charles,* the prosecutor was clearly referring to the defendant's post-arrest silence to clarify the inconsistency between the post-arrest statement and the trial defense. In the challenged cross-examination, the post-arrest silence was squarely juxtaposed with the post-arrest statement:

Q. Now, this Kelly's Tire Company, that's right next to the bus station, isn't it?
A. That's correct.
Q. And, the bus station and Kelly's Tire are right next to the Washtenaw County Jail are they not?
A. They are.
Q. And, when you're standing in the Washtenaw County Jail looking out the window you can look right out and see the bus station and Kelly's Tire, can you not?
A. That's correct.
Q. So, you've had plenty of opportunity from —well, first you spent some time in the Washtenaw County Jail, haven't you?
A. Quite a bit.
Q. And, you have had plenty of opportunity to look out that window and see the bus station and Kelly's Tire?
A. That's right.
Q. And, you've seen cars being parked there, isn't that right?
A. That's correct.

Q. Is this where you got the idea to come up with the story that you took a car from that location?
A. No, the reason I came up with that is because it's the truth.
Q. It's the truth?
A. That's right.
Q. Don't you think it's rather odd that if it were the truth that you didn't come forward and tell anybody at the time you were arrested, where you got that car?
A. No, I don't.
Q. You don't think that's odd?
A. I wasn't charged with auto theft, I was charged with murder.
Q. Didn't you think at the time you were arrested that possibly the car would have something to do with the charge of murder?
A. When I tried to talk to my attorney they wouldn't let me see him and after that he just said to keep quiet.
Q. That is a rather recent fabrication of yours isn't [sic] it not?
A. No it isn't.
Q. Well, you told Detective LeVanseler back when you were first arrested, you stole the car back on Washtenaw and Hill Street?
A. Never spoke with Detective LeVanseler.
Q. Never did?
A. Right, except when Detective Hall and Price were there and then it was on tape.
Trial Transcript 302–304. 447 U.S. at 406, 100 S.Ct. at 2181.