26 F.3d 132
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert F. SAUER, Petitioner-Appellant,
v.
STATE OF ALASKA; Diane Cooper, Alaska Department of
Corrections, Parole/Probation Officer,
Respondents-Appellees.
 No. 93-35182.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1994.*
Decided May 25, 1994.
 
 Before: TANG, BOOCHEVER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert Sauer, a former Alaska state prisoner who is now on parole, appeals the denial of his habeas corpus petition, filed under 28 U.S.C. Sec. 2254 (1988), in which he alleged violations of his constitutional right to remain silent and his right to due process. We review the district court's decision to deny a petition for habeas corpus de novo. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1818 (1993). We affirm.
 
 
 3
 I. Questions about Sauer's Blackmail Defense
 
 
 4
 Sauer was charged by the State of Alaska with the molestation of four girls who lived in his neighborhood. At trial, Sauer claimed that the charges of molestation had been fabricated by one girl, C.L.M., who he claimed coerced the other three girls into fabricating their own stories. He stated that C.L.M. had been blackmailing him for several months prior to his arrest, threatening to tell people that he molested her unless he gave her money. The prosecutor asked Sauer several questions about his blackmail defense on cross-examination, including why he had not told the police about the threatened blackmail when they questioned him prior to his arrest. The prosecutor also commented during the closing arguments on Sauer's earlier silence about the blackmail.
 
 
 5
 Sauer argues that the prosecutor violated his constitutional rights by asking him on cross-examination the reasons for his failure to tell police about the alleged blackmailing by C.L.M. and by stressing in closing arguments Sauer's silence about the blackmail.
 
 
 6
 Sauer objected at trial to the line of questioning, but did not raise this issue on direct appeal. He did, however, raise the issue in his application for post-conviction relief in Alaska state court. That court held that the issue was waived because it was not raised on direct appeal, and alternatively that Sauer's claim failed on the merits. The Alaska court of appeals affirmed, apparently on the ground that Sauer's claim failed on the merits. It is not clear whether the court also considered the issue waived.
 
 
 7
 The state argues to us that Sauer waived review of this claim, and asserts that Sauer can only raise the propriety of the questioning as part of an ineffective assistance of counsel claim, which he raised on direct appeal. Because we find that Sauer's constitutional claim fails even if reviewed on the merits, we need not decide whether our review should be limited in the manner suggested by the state. In any event, it follows from our holding that Sauer's state court appellate counsel's failure to appeal the line of questioning did not constitute ineffective assistance of counsel.
 
 
 8
 Under Doyle v. Ohio, 426 U.S. 610 (1976), a defendant's post-Miranda silence cannot be used to impeach an explanation subsequently given at trial. To allow such impeachment would be fundamentally unfair because a defendant is impliedly assured by the Miranda warnings that silence carries no penalty. 426 U.S. at 618-20. However, "Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements." Anderson v. Charles, 447 U.S. 404, 408 (1980) (per curiam). Thus, it is not improper to ask a defendant on cross-examination at trial why he told the jury a different story at trial than he had told police officers following his arrest. Id. at 408-09.
 
 
 9
 This circuit has interpreted Anderson broadly. In United States v. Makhlouta, 790 F.2d 1400, 1404 (9th Cir.1986), we held that if "a defendant makes post-arrest statements that ' "may arguably be inconsistent with the trial story," ' he has raised a question of credibility." (quoting United States v. Ochoa-Sanchez, 676 F.2d 1283, 1286 (9th Cir.) (emphasis added), cert. denied, 459 U.S. 911 (1982)). "The government, to provide all relevant evidence bearing on credibility, 'may probe all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details.' " Makhlouta, 790 F.2d at 1404 (quoting Ochoa-Sanchez, 676 F.2d at 1286).
 
 
 10
 The inquiry into the defendant's credibility should not, however, stray into questions that imply that the silence at the time of arrest is substantive evidence of the defendant's guilt. See Alo v. Olim, 639 F.2d 466, 468 (9th Cir.1980) ("prior silence cannot be used for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result") (quotations omitted); Ochoa-Sanchez, 676 F.2d at 1286 (citing Greico v. Hall, 641 F.2d 1029, 1034 (1st Cir.1981)).
 
 
 11
 Here, after being given the Miranda warnings, Sauer made several statements to the police. The officers "advised him that ... some ... kids had brought it to [their] attention that he had possibly been having sexual contact with some of the kids in the neighborhood." "[Sauer] said he didn't have anything to do with that, and didn't know what they were talking about." Sauer made no mention of any child's attempts to blackmail him by threatening to tell people he molested her.
 
 
 12
 Sauer's claim that he did not know what the police were talking about and that he did not have anything to do with any child's allegations of molestation is "arguably inconsistent" with his later claim of blackmail. A person who has been blackmailed with threats to report molestation knows something about allegations of molestation, even if what he knows is simply that they are false reports. Thus, the prosecutor was entitled to probe the inconsistency in order to impeach Sauer's credibility.
 
 
 13
 In addition, the prosecutor did not improperly attempt to lead the jury to infer Sauer's guilt from his silence as to the story; the inquiry instead appears to have been designed to show that Sauer's exculpatory story was fabricated. This is evidenced by the prosecutor's closing argument, where she asserted that the reason Sauer told neither the police nor any acquaintances about the blackmail was because the "blackmail story was totally made up, totally a fabrication."
 
 
 14
 The inquiry into his failure to mention blackmail did not violate Sauer's Miranda right to remain silent.
 
 II. Insinuating Questions
 
 15
 During Sauer's trial, the prosecutor questioned one of Sauer's witnesses, Barbara Cooper Baker, about the violent past of her ex-husband, Bill Cooper, and about whether she had ever told anyone that Sauer molested her daughter. Sauer was also questioned about his relationship with Bill Cooper and the likelihood that the Coopers' daughter would accuse Sauer of abuse in light of her parents' close relationship with Sauer. Sauer alleges that this questioning deprived him of a fair trial because it improperly suggested to the jury that Sauer was associated with a criminally violent person (Bill Cooper), and because the questions improperly insinuated that Sauer molested the Coopers' daughter. The state court found that the prosecutor's questions created "irrelevant and possibly misleading implications," but it also found that the answers to the questions and the instructions to the jury alleviated any harmful effect. We agree.
 
 
 16
 The prosecutor's questions that insinuated that Sauer molested the Coopers' daughter were improper. See United States v. Davenport, 753 F.2d 1460, 1463 (9th Cir.1985). In Davenport, the prosecutor asked the defense witness "Did you ever tell Mary Mabes that the defendant had told you he wanted you to help him rob the Wells Fargo Bank?" Prejudice to the defendant was created by the question, even though the witness answered "no." Although the witness' answer defended her own credibility, the answer did nothing to contradict the insinuated wrongdoing by the defendant. Id.
 
 
 17
 Unlike Davenport, the prosecutor's improper questioning here does not require reversal of the conviction. The insinuations were defused by the answers to the questions and the court's attempted curative instructions. Thus, although some of the questions were improper "negative pregnant" questions, they were harmless. See Brecht v. Abrahamson, 113 S.Ct. 1710, 1717-18, 1722 (1993) ("trial errors," which are errors that occur in the presentation of the case to the jury, are subject to the harmless error analysis, which on collateral review is assessed for a substantial and injurious effect or influence on the jury's verdict).
 
 
 18
 Barbara Cooper's responses to the prosecutor's insinuating questions did not leave unjustified innuendos dangling before the jury:
 
 
 19
 Q: Did you ever tell Samora Braley that Bob Sauer had touched your daughter Teresa's bottom and breast and that you or your son, the one who was killed, had to tell him to quit doing that?
 
 
 20
 A: No.
 
 
 21
 Q: You deny ever knowing about Bob Sauer molesting your daughter, Teresa?
 
 
 22
 A: No. He didn't molest my daughter, Teresa.
 
 
 23
 Q: And you've never told anybody that he has.
 
 
 24
 A: No.
 
 
 25
 Had there been no follow-up question to the first question, Davenport would have been directly on point. However, Barbara Cooper's answer to the second question eliminated the improper innuendo made in the first. Thus the danger in Davenport, that an uncontradicted covert insinuation would be conveyed to the jury, was not presented here.
 
 
 26
 Likewise, insinuations arising from any improper questioning of Sauer were also contradicted. The prosecutor asked Sauer about children he knew in the neighborhood other than the four girls testifying against him. One girl identified was Teresa Cooper. The prosecutor asked:
 
 
 27
 Q; So, little Teresa Cooper would not be very likely to accuse the man who had given her mother a car, and had worked to get her father out of jail ... [of] sexually molesting her, would she?
 
 
 28
 Sauer did not answer this question because his attorney's objection to the question was sustained, and the court did not give a curative instruction. However, the prosecutor asked moments later: "Mr. Sauer, are you saying that these little girls, [including Teresa Cooper] ... have never been molested by you?" Sauer answered "Yes."
 
 
 29
 Thus, any improper innuendos were explicitly refuted by Cooper and Sauer. Unlike in Davenport, the questions did not succeed in leaving the jury with uncontradicted insinuations of a propensity for child molestation.[1]
 
 
 30
 Sauer also argues that questions about Bill Cooper's violent nature were improper because they insinuated to the jury that Sauer associated with violent people. Most of the questions about Bill Cooper were asked to expose Barbara Cooper's biases as a witness on behalf of Sauer; these were proper. And even if any of these questions were improper, they were harmless. The questions about whether Bill Cooper was a violent man constituted less than one page of the trial transcript. Moreover, they were unrelated to any of the elements of the crimes with which Sauer was charged, and in light of the strong evidence of Sauer's guilt, they could not have had an impact on the jury's verdict. See Brecht, 113 S.Ct. at 1722.
 
 
 31
 Sauer was not subject to such prejudice and fundamental unfairness by the questioning that his conviction requires reversal. Any erroneous questioning was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Id. The district court did not err by denying Sauer's petition for habeas corpus on these grounds.
 
 III. Conclusion
 
 32
 The prosecutor did not violate Doyle v. Ohio when she questioned Sauer about his blackmail defense. Furthermore, Sauer's trial was not rendered fundamentally unfair by the prosecutor's improper questioning technique; any error was harmless. The district court's denial of Sauer's petition for habeas corpus is AFFIRMED.
 
 REINHARDT, Circuit Judge, concurring:
 
 33
 I concur in the result only because we are bound by United States v. Makhlouta, 790 F.2d 1400 (9th Cir.1986). Were I free to do so, I would disregard what I believe to be a clearly erroneous rule. With respect to the curative instruction quoted in n. 1, ante, I can only say that anyone who can follow it has the advantage of me.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the trial court also attempted a curative instruction at one point during the questioning of Barbara Cooper, it was somewhat unclear. The court stated:
 ... the jury will disregard the--the jury will disregard the statement on anything that--other than the fact they answer yes or no, hasn't answered to it. Saying no--no is not an answer. Except that you don't know anything about it. Now, if she doesn't know, that's not an answer that anybody places any significance on.
 Standing alone, this admonition did not make clear that the prosecutor was making improper insinuations. Because the answers to the questions defused the insinuations, however, a more thorough instruction was not necessary.